UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| R.G. BRINKMANN COMPANY d/b/a R.G. BRINKMANN CONSTRUCTION COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:11CV1125 JAR |
| AMERISURE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff R.G. Brinkmann Company d/b/a R.G. Brinkmann Construction Company's Partial Motion for Summary Judgment (ECF No. 30), Defendant's Motion for Summary Judgment (ECF No. 38), and Plaintiff's Motion to Strike and Objection to Certain Affidavit Testimony and Memorandum in Support (ECF No. 43). These matters are fully briefed and ready for disposition.

**BACKGROUND**

In 2001, Defendant Amerisure Insurance Company ("Amerisure") issued a Commercial General Liability ("CGL") insurance policy ("Policy") to Plaintiff R.G. Brinkmann Company d/b/a R.G. Brinkmann Construction Company ("Brinkmann"), the named insured, for any claims related to site construction work performed by Brinkmann as a general contractor. The CGL Policy issued by Amerisure was active between February 15, 2001 to February 15, 2006.

The "Coverage A" section of the CGL Policy, entitled "Bodily Injury and Property Damage Liability," insures against "property damage" that is caused by an "occurrence". Coverage A specifically provides:

> We [Amerisure] will pay those sums that the Insured [Brinkmann] becomes legally obligated to pay as damages because of "property" damage to which this insurance

applies. We will have the right and duty to defend any "suit" seeking those damages ....

This insurance applies to ... "property damage" only if:

(1) The ... "property damage" is caused by an occurrence that takes place in the "coverage territory;" and

(2) The ... "property damage" occurs during the policy period.

The Policy also includes a "your work" exclusion of coverage for work performed by the insured:

This insurance does not apply to:

1) damage to your property

"property damage" to "your work" arising out of it or any part of it and included in the "products-completed operation hazard." This exclusion does not apply if the damaged work or the work under which the damage arises was performed on your behalf by a subcontractor.

In turn, "Your work" is defined in the Policy as:

1. Work or operations performed by you or on your behalf;

   and

2. Materials, parts or equipment furnished in connection with such work or operations.

The underlying claims in this litigation arise from damage to what became the Hamilton Marketplace Shopping Center owned by JDN Real Estate-Hamilton, L.P. ("JDN") in Hamilton, New Jersey (the "Project"). JDN's predecessor in interest, JDN Development Co. ("JDN Development") and Brinkmann entered into a contract dated September 10, 2001, whereby Brinkmann agreed to perform Phase I of the Project, consisting of site work. The site work involved excavation, rough and finish grading, the installation of five earth building pads, and some of the asphalt and concrete paving for the access roads, crosswalks, sidewalks and parking lots. Brinkmann hired subcontractors to perform the site work. The two main subcontractors were Pillari Brothers

("Pillari") and Trap Rock Industries ("Trap Rock"). Pillari performed the excavation work. Trap Rock installed the pavement in the Phase I.

JDN hired Jayeff Construction Corp. ("Jayeff") as the general contractor for Phase II of the Project. In Phase II, Jayeff and Trap Rock, as Jayeff's subcontractor, installed further shopping center improvements, including sidewalks, crosswalks and pavement.

On August 1, 2008, JDN filed suit in New Jersey Superior Court against Trap Rock and unnamed "ABC Company(ies) 1-10". The Complaint alleged that Trap Rock and the ABC Companies performed their work in a negligent manner, which resulted in "defective asphalt and paving, cracked sidewalks and deteriorated curbs."

On October 22, 2008, Trap Rock filed a Third-Party Complaint against Brinkmann, Jayeff, and other parties seeking indemnity or, in the alternative, contribution pursuant to New Jersey's Joint Tortfeasors Contribution Act. On that same day, Brinkmann forwarded the JDN Complaint and the Trap Rock Third-Party Complaint (collectively, the "Initial Pleadings") to AHM Financial Group ("AHM"), Brinkmann's insurance broker. Amerisure received the Initial Pleadings from AHM on November 5, 2008.

Amerisure assigned Wayne Andreae as its claims adjuster. Jill Siegrist was Mr. Andreae's supervisor. Amerisure began its investigation into Brinkmann's claim on November 6, 2008. On that date, Ms. Siegrist wrote, in part:

> The allegations in the original complaint allege negligent construction, including cracks in the pavement, etc. No resulting damage alleged, the Contract between insured and owners contains a waiver of subrogation both ways. It appears that is why JDN filed original complaint against Trap Rock, who was insured's sub-contractor. The contract between insured and Trap Rock would indicate that Trap Rock owes indemnity to Insured not vice versa, regardless the entire claim involves construction defect to the insured's work. I don't think we even get to an occurrence which would trigger the policy...

On November 11, 2008, Mr. Andreae wrote a letter to Larry Lapinski, the project manager at Brinkmann, stating that Amerisure would investigate this matter under a full Reservation of Rights. Mr. Andreae indicated that the CGL Policy would not provide coverage "for an insured's alleged defective workmanship that does not result in damage to anything other than the work itself, as it is not an occurrence within the definition of the policy." This was not a denial letter because Amerisure stated that it would continue to investigate and monitor the claim to determine whether it had a duty to defend Brinkmann. Brinkmann was instructed to retain its own defense counsel while Amerisure investigated Brinkmann's claim and determined whether there was insurance coverage. Amerisure further advised that "if at a later date we determine that there would be coverage for your loss, we could reimburse your defense counsel for the costs involved in defending this action." Brinkmann retained the services of its regular general counsel, Andrew Manuel of Greensfelder, Hemker and Gale, P.C., as well as Alison Galer of Norris McLaughlin and Marcus, PA, who served as Brinkmann's local counsel.

Mr. Andreae prepared a "Referral Memorandum Questionable Coverage" ("QC Memorandum"), dated April 13, 2009, which stated:

> The only comment made by the insured's attorney was that it is still not clear whether or not there is any other damage other than to the insured's work itself or that of their [sic] subcontractors. But it seems clear from the allegations in the lawsuit and the information that I have received that it only pertains to the asphalt driveways and parking lots, which would be excluded under our general liability policy.[1]

On April 20, 2009, JDN filed an Amended Complaint. JDN alleged, among other things, that Brinkmann carelessly and negligently performed the site work, and negligently supervised its subcontractors' performance, resulting in damage to pavement and other shopping center

---

[1] Mr. Andreae retired soon after preparing his QC Memorandum.

improvements. The Amended Complaint also noted that Jayeff was a prime contractor on Phase II of the Project, and alleged claims against Jayeff for breach of contract and negligent supervision.

In early 2009, Brinkmann filed a motion to compel arbitration in the New Jersey litigation. Thereafter, JDN agreed to pursue its claim against Brinkmann in arbitration.

On June 8, 2009, Amerisure issued a letter officially denying coverage to Brinkmann, which stated, in pertinent part:

> First, our investigation has determined that the only damage that has occurred is to the concrete itself that [Brinkmann's] subcontractor constructed and/or designed. [Brinkmann's] policy does not provide coverage for alleged defective workmanship which has not resulted in any physical injury to tangible property, as this does not constitute an "occurrence" under Missouri law.

The letter concludes by saying, "[i]f you have information you believe would support a contrary determination, please submit the information to us in writing for further consideration in connection with this claim."

On or around November 13, 2009, Brinkmann received JDN's Detailed Statement of Claim filed in the arbitration case. In the Detailed Statement of Claim, JDN asserted that Brinkmann should pay $1,363,945 in repair costs resulting from Brinkmann's failure to: (a) perform the soils work correctly, resulting in oversaturated soils incapable of supporting pavement, crosswalks, and sidewalks; (b) properly supervise its subcontractors; (c) follow proper construction and industry practices; and (d) install under-drainage systems where required. JDN's Expert Report, an exhibit to the Detailed Statement of Claim, concluded that

> Jayeff was engaged primarily in the construction of certain buildings and retail stores along with the crosswalks associated with the stores. The crosswalks included three (3) in front of Hallmark, Subway, and Hair Cuttery, and the crosswalks at the intersection of the drive across the front of the above stores at Patriot's Way.

JDN's Detailed Statement of Claim lists the following two items as claims against Brinkmann: "full depth crosswalk replacement in front of Hallmark, Hair Cuttery, and Subway" and "Full depth crosswalk replacement at the intersection of Patriot's Way and the drive aisle across Hallmark, Hair Cuttery, and Michaels." Amerisure contends that "[t]his statement, taken in conjunction with the findings in the Expert Report, clearly show damage claimed against Brinkmann for replacement of work done by Jayeff, another contractor." (Defendant's Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 39, ¶31).

Amerisure received the Detailed Statement of Claim on January 7, 2010--about 3 weeks before the February 2010 arbitration hearings. Amerisure contends that Brinkmann did not provide JDN's Expert Report along with the Detailed Statement of Claim. Amerisure's claim adjuster, Joanne Collick, who replaced the retired Mr. Andreae, determined in January 2010 that JDN's Detailed Statement of Claim, which did not include the Expert Report, contained "no information that contradicts the QC decision (or any new information)."

The arbitration proceedings were held in February 2010. During the arbitration, JDN's property manager testified regarding the damaged pavement and crosswalks. He identified, by color-coding, a site plan that showed the damaged areas and which areas had been repaired from 2004 to 2009. He identified areas where Jayeff or a Jayeff subcontractor installed pavement over the dirt work installed by Brinkmann's subcontractor. Ultimately, JDN was denied an arbitration award on each of its claims against Brinkmann.

On or around July 1, 2010, AHM, on Brinkmann's behalf, submitted additional information to Amerisure to support its claim that the damage cited by JDN included work by other contractors. AHM provided Amerisure with JDN's pre-hearing brief, JDN's post-hearing brief, JDN's post-hearing reply brief and JDN's color-coded damages drawing used in the arbitration hearing.

Brinkmann sought reimbursement of its defense costs. On July 27, 2011, Ms. Collick spoke to the AHM Financial representative and made the following log note of the telephone conversation:

> Received c/b [call back] from agent A[H]M Financial, who believes that the allegations included work damaged that was listed in the brief as RG Brinkmann's work, but was actually someone else's work (Jayeff Construction-built the pavement and crosswalks). She indicates that the two items in particular are h and j [of the JDN claim statement], which were not the insured's work, they only prepared the soil in those areas. She indicated that the defense costs were "substantial" and she is seeking some recovery of the same. She will compile actual costs and send to me. Reviewing file with supervisor--do we need a supplemental QC?

On August 26, 2010, Ms. Collick's supervisor, Ann Langschied, reviewed the file. In her log entry she stated, "If the damages related to Phase II, please find out whether our [insured] had any involvement with the soil or concrete."

In October 2010, Amerisure inquired about the property that suffered damage. Brinkmann, through AHM, provided Amerisure with a letter and copy of the JDN pavement damage and repair drawing. On the drawing, Brinkmann highlighted in pink those repaired areas where the concrete had been installed by someone other than Brinkmann or a Brinkmann subcontractor.

On or around January 10, 2011, Amerisure issued a letter denying coverage for Brinkmann's defense costs. Ms. Collick stated that the primary reason for Amerisure's denial was that the only damage that occurred was to the improvements installed by Brinkmann or its subcontractors.

On June 23, 2011, Brinkmann filed this diversity action against Amerisure, alleging claims for Breach of Insurance Contract (Count I) and Vexatious Refusal to Pay (Count II).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City

of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of its pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

**DISCUSSION**

**I.      CHOICE OF LAW**

District courts, whether sitting in diversity or deciding supplemental state law claims, are required to use the choice-of-law rules for the state in which it sits. DCS Sanitation Mgmt., Inc. v. Castillo, 435 F.3d 892, 895 (8th Cir. 2006); Wolfley v. Solectron USA, Inc., 541 F.3d 819, 823 (8th Cir. 2008); Rosemann v. Sigillito, No. 10-CV-1165-LRR, 2012 U.S. Dist. LEXIS 88541, at *9 (E.D.

Mo. June 26, 2012). The parties, however, agree that Missouri law applies, and no choice of law analysis is necessary.

## II.  BREACH OF CONTRACT

"The interpretation of an insurance policy is a question of law." McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 171 (Mo. 1999). The Court must "ascertain the intention of the parties and . . . give effect to that intention." Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012)(quoting J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973)); Interstate Bakeries Corp. v. Onebeacon Ins. Co., 686 F.3d 539, 543 (8th Cir. 2012). The insured bears the burden of proving coverage. Interstate Bakeries Corp., 686 F.3d at 543; Secura Ins., 670 F.3d at 861-62 ("Under Missouri law, the insured has the burden to show that the policy covers its loss."); American States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998). The insurer has the burden of showing that an exclusion from coverage applies. Interstate Bakeries Corp., 686 F.3d at 543; Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 80 (Mo. Ct. App. 2005).

The Court recognizes that "[a] duty to defend 'arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case,' and it is 'broader than the duty to indemnify.'" Secura Ins., 670 F.3d at 861 (quoting McCormack Baron Mgmt. Servs., Inc., 989 S.W.2d at 170). The Eighth Circuit recently discussed the duty to defend under Missouri law:

> "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." Id. at 170-71. In addition, an insurer cannot "merely rest upon the allegations contained within the petition." Stark Liquidation Co. v. Florists' Mut. Ins. Co., 243 S.W.3d 385, 392 (Mo. Ct. App. 2007). Rather, the insurer should also consider "other facts it knew, or could have learned from a 'reasonable investigation' at the time the lawsuit was filed." Secura Ins., 670 F.3d at 861 (quoting Trainwreck W. Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 42 (Mo. Ct. App. 2007)). The duty to defend "is to be determined from the cause of action

pleaded, at the time the action is commenced, not from what [a later] investigation or a trial of the case may show the true facts to be." Trainwreck, 235 S.W.3d at 39 (emphasis omitted) (quoting Inter-State Oil Co. v. Equity Mut. Ins. Co., 183 S.W.2d 328, 332 (Mo. Ct. App. 1944)). In determining whether there is a duty to defend, a court is barred from "reading into [a complaint] any factual assumptions." See Penn-Star Ins. Co. v. Griffey, 306 S.W.3d 591, 599 (Mo. Ct. App. 2010).

Interstate Bakeries Corp., 686 F.3d at 542-43.

"Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts 'give rise to a claim potentially within the policy's coverage.'" Interstate Bakeries Corp., 686 F.3d at 544 (quoting McCormack, 989 S.W.2d at 170). The Court recognizes that the "use of the word 'potentially' does not render boundless the duty to defend." Interstate Bakeries Corp., 686 F.3d at 544. Rather, "[t]he duty to defend is determined by the language in the policy and the allegations in the complaint." Secura Ins., 670 F.3d at 861; Esicorp, Inc. v. Liberty Mut. Ins. Co., 193 F.3d 966, 969 (8th Cir. Mo. 1999); McCormack Baron Mgmt. Servs., Inc., 989 S.W.2d at 170. "To extricate itself from a duty to defend a suit against the insured, the insurer must demonstrate that there is no possibility of coverage." Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am., 295 S.W.3d 557, 561 (Mo. Ct. App. 2009). "The presence of some insured claims in the underlying suit gives rise to a duty to defend, even though uninsured claims or claims beyond the coverage may also be present." Lampert v. State Farm Fire & Cas. Co., 85 S.W.3d 90, 93 (Mo. Ct. App. 2002). Moreover, "the insurer may not ignore 'actual facts,' that is, 'facts which were known, or should have been reasonably apparent at the commencement of the suit.'" Esicorp, Inc., 193 F.3d at 969 (quoting Marshall's U.S. Auto Supply, Inc. v. Maryland Cas. Co., 354 Mo. 455, 189 S.W.2d 529, 531 (Mo. 1945)).

This case involves a CGL policy issued by Amerisure on behalf of Brinkmann, which insures certain property damage caused by an "occurrence" as defined under the Policy. "The intent of such policies is to protect against the unpredictable and potentially unlimited liability that can result from

accidentally causing injury to other persons or their property." Mathis, 974 S.W.2d at 649; Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. banc 1998). "The CGL policy does not serve as a performance bond, nor does it serve as a warranty of goods or services." Mathis, 974 S.W.2d at 649. Thus, any damage to work performed by Brinkmann or its subcontractors would not be an "occurrence" under the Policy because it would fall under the "your work" exclusion in the Policy.

In this action, Brinkmann asserts that Amerisure had a duty to defend Brinkmann against JDN's claims for breach of contract and negligence, as well as Trap Rock's third party indemnity claims. The parties agree that JDN ultimately asserted damages to another contractor's work against Brinkmann. See, e.g., Defendant's Memorandum, p. 10 ("Amerisure does not deny that facts later emerged showing that JDN intended to claim damages to another contractor's work against Brinkmann."). Given that the duty to defend is determined at the outset of the case, however, the issue is whether the allegations in the pleadings demonstrated that Brinkmann, while acting as a contractor, negligently caused damage to property not limited to Brinkmann's work, or whether such a claim would have been discernible with a reasonable investigation by Amerisure. (Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgment ("Plaintiff's Memorandum"), ECF No. 35, p. 1). Thus, in reviewing a duty to defend claim, the Court ignores any reliance on facts that emerged during discovery and focuses on Amerisure's policy provisions and the allegations in JDN's and Trap Rock's complaints against Brinkmann. Esicorp, Inc., 193 F.3d at 969. Amerisure, however, also had an obligation to reconsider its refusal to defend when Brinkmann later submitted an amended pleading or additional facts that suggest the presence of covered claims. Id, 193 F.3d at 969, n.1.

Amerisure argues that the Initial Pleadings and the Amended Complaint only alleged claims against Brinkmann for its own work. Amerisure reads the claims made by JDN as involving "defective **asphalt and paving** which resulted in only damages to **asphalt and paving**."

- 11 -

(Defendant's Memorandum in Support of its Motion for Summary Judgment ("Defendant's Memorandum"), ECF No. 40, p. 7)(emphasis in original). Amerisure argues that "the cause of action pleaded appears to demonstrate that JDN was seeking only damages for the replacement of Brinkmann's defective workmanship on the asphalt installed as part of the scope of their work on the shopping center project." (Id., p. 8). Amerisure emphasizes that the claim initially reported to Amerisure involved only Trap Rock's (Brinkmann's own subcontractor) claim for indemnity. (Id., p. 8). Amerisure argues that all of the allegations in Trap Rock's claim for indemnity must have been for work that Brinkmann's own subcontractor performed. (Id., p. 8).

Likewise, Amerisure claims that the Amended Complaint alleges only claims for negligence and breach of contract that arose out of Brinkmann's subcontractor's paving work and installation of asphalt. The Amended Complaint's allegations against Brinkmann are as follows:

### COUNT III
### BREACH OF CONTRACT
### (R.G. Brinkmann)

46. Plaintiff restates and realleges each of the allegations made in paragraphs 1 through 45 as it [sic] set forth again in full.
47. Brinkmann entered into the 2001 Agreement with Plaintiff's predecessor, pursuant to which it agreed to act as a prime contractor to perform construction services at the Project.
48. Brinkmann thereafter entered into a subcontract agreement with Trap Rock pursuant to which Trap Rock agreed to perform construction of various roadways at the Project, including but not limited to the **completion of asphalt work and paving of such roadways**.
49. Pursuant to the 2001 Agreement, Brinkmann agreed to "supervise and direct" all the work at the site, using its "best skill and attention."
50. Brinkmann breached the 2001 Agreement with JDN Development.
51. Plaintiff has been damaged by this breach.

### COUNT IV
### NEGLIGENT SUPERVISION
### (R.G. Brinkmann)

52. Plaintiff restates and realleges each of the allegations made in paragraphs 1 through 45 as it [sic] set forth again in full.
53. The Project contains multiple construction deficiencies, including but not limited to, defective asphalt and paving, cracked sidewalks and deteriorated curbs.

> 54. In its capacity as the contractor on the project, Brinkmann had a duty to supervise and direct the work of its subcontractors.
> 55. Brinkmann's subcontractor, Trap Rock, **negligently performed the paving and defectively installed the asphalt** at the Project.
> 56. Brinkmann failed to ensure that the **installation of asphalt and paving be performed without such deficiencies** and failed to assure that the said deficiencies were corrected, and thus breached its duty to supervise and direct the work at the Project.
> 57. **The construction deficiencies** were a direct and proximate result from Brinkmann's failure to supervise and direct the work of Trap Rock.
> 58. Such failure by Brinkmann constitutes negligence.
> 59. Plaintiff has been damaged and will continue to suffer damages as a direct and proximate result of the Brinkmann's [sic] said negligence.

(Defendant's Memorandum, pp. 8-9)(emphasis in Memorandum). Amerisure asserts that these pleadings make clear that the claims arose out of Brinkmann's subcontractor paving work and installation of asphalt. (Id., p. 9). Amerisure claims that the pleadings state that Brinkmann performed work on Phase I of the Project and that Jayeff performed work on Phase II of the Project. (Id., p. 9). Amerisure contends that "[n]othing connects these two phases or the work performed in either of them, and both general contractors are alleged to be responsible for their own 'construction deficiencies.'" (Id., p. 9).

Brinkmann, however, contends that the allegations in the pleadings and the statements in JDN's claim statement "support a theory, among various claim theories, that the damage to property, other than to Brinkmann's work, was fortuitous and due to Brinkmann's negligence." (Plaintiff's Memorandum, p. 20). Brinkmann claims that the Initial Pleadings and the Amended Complaint are not limited to Brinkmann's own work. Brinkmann further contends that Amerisure could have discovered through a reasonable investigation in late 2008 and thereafter that JDN's claims were broad enough to include contentions that Brinkmann or one or more of its subcontractors were negligent in the performance of the site development work that is at issue in JDN's claims. Brinkmann contends that facts either were known to Amerisure or were ascertainable through reasonable investigation of the underlying suit that may have created a duty to defend. Cf. Custom

Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am., 295 S.W.3d 557, 563, n.6 (Mo. Ct. App. 2009)("neither Plaintiffs nor [insurer] points to any facts that were either known to Assurance or that were ascertainable through reasonable investigation at the commencement of the underlying suit that may have created a duty to defend").

The Court holds that, from the time of the filing of the Amended Complaint, Amerisure knew or reasonably could have learned through reasonable investigation that JDN was alleging claims against Brinkmann that were potentially for damage to work performed by another contractor. See Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005)("If the allegations and claims in the [plaintiffs']original and First Amended petitions, and the facts [insurer] knew or could have ascertained from a reasonable investigation, are potentially within the scope of the policy's coverage, then [insurer] wrongfully refused to defend [insured]."). While the Initial Pleadings and the Amended Complaint clearly included allegations that were excluded from coverage under the "your work" exclusion, "[t]he duty to defend *potentially* insured claims arises 'even though claims beyond coverage may also be present.'" Renco Group, Inc. v. Certain Underwriters at Lloyd's, London, 362 S.W.3d 472, 480 (Mo. Ct. App. 2012)(quoting Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005)). JDN's Amended Complaint alleges claims against both Brinkmann and Jayeff for breach of contract and negligence for failure to properly supervise and/or direct the work performed by their subcontractors at the Project. (ECF No. 1-9, ¶¶29, 46-73). The Amended Complaint shows that Brinkmann and Jayeff both utilized Trap Rock to perform paving and installation work for both stages of the Project. (ECF No. 1-9, ¶¶29-30, 52-59, 66-73). The Amended Complaint alleges that Trap Rock's negligence caused "significant problems with the structural integrity of the asphalt and paving." (ECF No. 1-9, ¶¶¶26-27). The Amended Complaint makes apparent that Jayeff served as the primary contractor for the balance of Phase II of the Project, which included asphalt and paving work. (ECF No. 1-9,

¶¶18-22). Based upon the foregoing, Amerisure knew or reasonably could have known that Brinkmann's subcontractors performed all the excavation and soil work, but that Brinkmann's subcontractors performed only some of the asphalt work and paving of roadways. In addition, Amerisure knew that Jayeff's subcontractor in Phase II of the Project installed further shopping center improvements, including sidewalks, crosswalks and pavement placed upon the site work performed by Brinkmann's subcontractor. In addition, the Amended Complaint did not limit the damage to Brinkmann's own work and, in fact, expansively described the damage as "**including but not limited to** the completion of asphalt work and paving of such roadways." Because the Amended Complaint "alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." McCormack Baron Mgmt. Servs., Inc., 989 S.W.2d at 170-71. Amerisure has failed to "prove that there is **no possibility** of coverage." Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005)(quoting King v. Cont'l W. Ins. Co., 123 S.W. 3d 259, 264 (Mo. Ct. App. 2003)(emphasis in original)). The Court finds that potentially covered claims were cognizable no later than the Amended Complaint and grants Brinkmann's partial motion for summary judgment, and denies Amerisure's motion for summary judgment with respect to the breach of contract claim in Count I.

### III.    VEXATIOUS REFUSAL TO PAY

To recover damages for vexatious refusal to pay, Brinkmann must establish that: (1) it had an insurance policy with Amerisure; (2) Amerisure refused to pay; and (3) its refusal was "without reasonable cause or excuse." Schubert v. Auto Owners Ins. Co., 649 F.3d 817, 823 (8th Cir. 2011)(citing Dhyne v. State Farm Fire & Cas. Co., 188 S.W.3d 454, 457 (Mo. 2006)); De Witt v. American Family Mut. Ins. Co., 667 S.W.2d 700, 710 (Mo. 1984)("To support the imposition of the

penalty under the statute, plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person."); R.S.Mo. § 375.420. "There is no vexatious refusal when the insurer has reasonable cause to believe and does believe there is no liability under its policy and that it has a meritorious defense." Macheca Transp. Co. v. Phila. Indem. Ins. Co., 649 F.3d 661, 674 (8th Cir. 2011)(citing Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 55 (Mo. Ct. App. 1998)); Schubert, 649 F.3d at 824-825. "This determination must be made by viewing the facts as they appeared at the time of the refusal to pay." State Farm Mut. Auto. Ins. Co. v. Shahan, 141 F.3d 819, 824 (8th Cir. 1998).

Brinkmann claims that Amerisure breached its duty to defend pursuant to the CGL Policy without reasonable cause or excuse. In turn, Amerisure asserts that it had a reasonable belief that throughout the litigation and up until the arbitration that the claims against Brinkmann were solely for work performed by Brinkmann and its subcontractors and, therefore, were not an occurrence under the Policy.

The Court finds that no issue of fact exists and that Amerisure is entitled to judgment as a matter of law because "the record shows [Amerisure] reasonably believed it had a meritorious defense to insurance coverage." Macheca Transp. Co., 649 F.3d at 674. Brinkmann admits throughout its briefing that the Initial Pleadings and the Amended Complaint were unclear, such that the parties were not certain what damages JDN was seeking. Amerisure investigated Brinkmann's claims, including interviewing Brinkmann's own counsel, but reasonably concluded that the claims were not covered. See Cedar Hill Hardware & Constr. Supply v. Ins. Corp. of Hannover, 563 F.3d 329, 344 (8th Cir. 2009)("[I]f the case is one where the information in the company's possession at the time it is called upon to pay is such as to raise a fair doubt about its liability, then it is not to be charged with bad faith in demanding a judicial determination of the matter, and in such a situation its refusal to pay is not vexatious within the meaning of the statute.")(citation omitted). For

example, Brinkmann's own counsel, Mr. Manuel, told Amerisure that he was not sure of the damages to the property and he was unable to indicate whether the damages included work other than the insured's work. When Amerisure declined to defend Brinkmann's claim, Amerisure told Brinkmann to provide additional evidence if it wanted Amerisure to reconsider the denial. Brinkmann, however, did not provide any additional documentation to support its claim until it provided JDN's Statement of Claim, but without the Expert Report. Tom Oberle, Executive Vice President for R.G. Brinkmann, admitted in his deposition that it was not until Brinkmann received JDN's Detailed Statement of Claim that Brinkmann, with the Expert Report, that Brinkmann was "certain what [JDN's] claim involved." (ECF No. 39-1, pp. 42-43). Again, at oral argument, counsel for Brinkmann admitted that, without the Expert Report, it was not clear from the Detailed Statement of Claim that JDN was seeking damages to property other than Brinkmann's work. Thus, it was not until the arbitration that it was absolutely certain that JDN was seeking to find Brinkmann liable, in part, for work performed by Jayeff and its subcontractors. Amerisure, however, cannot be held liable based upon information discerned during the arbitration.[2] Absent evidence that Amerisure's refusal to defend was without reasonable cause, the Court grants Amerisure's motion for summary judgment with respect to Brinkmann's claim for vexatious refusal to pay in Count II. See State Farm Mut. Auto. Ins. Co. v. Shahan, 141 F.3d 819, 824 (8th Cir. 1998)(granting summary

---

[2]Brinkmann argues that Amerisure vexatiously refused to recognize its duty to defend even after the arbitration proceedings made clear that JDN was seeking damages to another contractor's work. See Plaintiff's Response, pp. 12-14. Specifically, a map produced at the arbitration by JDN outlined the damage to the Project and made clear that JDN was seeking to find Brinkmann liable to work performed by Jayeff or its subcontractors. Any information learned at the arbitration or thereafter, however, is irrelevant to Amerisure's determination regarding whether it had a duty to defend. See Trainwreck, 235 S.W.3d at 39 (duty to defend "is to be determined from the cause of action pleaded, at the time the action is commenced, not from what [a later] investigation or a trial of the case may show the true facts to be"); Esicorp, Inc., 193 F.3d at 969 (court cannot make a duty to defend determination on facts that emerged during discovery but must focus on the allegations in the complaint).

judgment for the insurer where plaintiff failed "to identify any evidence that could conceivably support a finding that State Farm's attitude was 'vexatious and recalcitrant'").[3]

## IV.  MOTION TO STRIKE

At issue in the Motion to Strike is paragraph 5 from the affidavit of Amerisure's claim adjuster Joanne M. Collick, submitted in support of Defendant's Motion for Summary Judgment. This paragraph provides:

> On June 15, 2009, I spoke with representatives of Brinkmann who confirmed that they understood the reason for the denial of coverage. They did not tell me that the claim against Brinkmann involved anything other than physical damage to the concrete, asphalt, and pavement itself that Brinkmann or its subcontractors constructed and/or designed.

Brinkmann argues that paragraph 5 of Collick's affidavit should be stricken because it lacks foundation and constitutes hearsay. Amerisure contends that Collick's statements are admissible because they are not offered for the truth of the matter asserted but to demonstrate the information in Amerisure's possession when it made the decision to deny coverage.

---

[3] In entering this judgment, this Court recognizes the different standards of liability that govern these two claims and which result in the different judgments. On the breach of contract claim, this Court is holding that Amerisure knew or reasonably could have learned that JDN was alleging claims against Brinkmann for work performed by other contractors. That finding that Amerisure could have discerned a duty to defend through a reasonable investigation is not contrary to a finding that Amerisure did not vexatiously refuse to pay Brinkmann's claim. Under a vexatious refusal to pay claim, the Court looks at Amerisure's belief at the time it refused to pay the claim. Given the inconclusive and incomplete information provided by Brinkmann to Amerisure, the Court concludes that Amerisure reasonably (but incorrectly) believed that Brinkmann's claim was not covered.

In other words, Amerisure would have to demonstrate "no possibility" of liability to defeat Brinkmann's claim for breach of contract for failure to defend. Custom Hardware Eng'g & Consulting, Inc., 295 S.W.3d at 561. But, Amerisure need only show a "fair doubt about its liability" or that it believed it had a "meritorious defense to insurance coverage" in order to defeat a vexatious refusal to pay claim. Macheca Transp. Co., 649 F.3d at 674; Cedar Hill Hardware & Constr. Supply, 563 F.3d at 344. Amerisure cannot demonstrate that there was no possibility that it had a duty to defend Brinkmann; but, based upon the information provided by Brinkmann, Amerisure had a meritorious defense to Brinkmann's allegation of insurance coverage.

The Court ruled on the Motions for Summary Judgment without considering paragraph 5 of Ms. Collick's affidavit. Brinkmann's Motion to Strike, therefore, is denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff R.G. Brinkmann Company d/b/a R.G. Brinkmann Construction Company's Partial Motion for Summary Judgment [30] is **GRANTED**. Further, Defendant's Motion for Summary Judgment [38] is **DENIED** with respect to Count I and **GRANTED** with respect to Count II. Finally, Plaintiff's Motion to Strike and Objection to Certain Affidavit Testimony and Memorandum in Support [43] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Court shall have a scheduling conference with the parties via telephone on December 18, 2012 at 11:00 a.m. to establish a briefing schedule and to schedule a date for the hearing on damages.

Dated this 30th day of November, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE